U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 26, 2008**                    **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| TODD ENTERTAINMENT | § | CASE NO. 07-44452-DML-7 |
| | § | |
| Debtor, | § | |
| | § | |

---

| | | |
|---|---|---|
| MARILYN D. GARNER, TRUSTEE | § | |
| FOR THE BANKRUPTCY ESTATE | § | |
| OF TODD ENTERTAINMENT, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | ADV. NO. 08-04081-DML-7 |
| | § | |
| JOSHUA LEROY TODD and | § | |
| BUCKCHERRY WORLDWIDE, LLC | § | |
| | § | |
| Defendants. | § | |

JOSH TODD,                                      §
                                                §
          Plaintiff,                            §
                                                §
v.                                              §                    ADV. NO. 08-04106-DML-7
                                                §
TODD MEAGHER, et al.                            §
                                                §
          Defendant.                            §

## MEMORANDUM OPINION

Before the court are:

1.       The *Motion of Josh Todd for an Order Determining that the Automatic Stay is not*
         *Applicable to the Filing of a Petition with the California Labor Commission, or in*
         *the Alternative, for Relief from the Automatic Stay to File a Petition with the*
         *California Labor Commission (*the "Stay Motion") filed by Josh Todd ("Todd")
         and Buckcherry Worldwide, LLC ("Buckcherry") in the chapter 7 case of Todd
         Entertainment, LLC ("TEL" or "Debtor");

2.       The  *Joint Motion of Defendants Josh Todd and Buckcherry Worldwide, LLC to*
         *Dismiss Trustee's Original Complaint Pursuant to Federal Rules of Civil*
         *Procedure 12(b)(6) and (7), or, in the Alternative, Motion Requesting Abstention*
         *and Stay of the Adversary Proceeding* (the "MTD") filed by Todd in that
         adversary proceeding filed by Marilyn D. Garner, chapter 7 trustee for TEL (the
         "Trustee"), against Todd and Buckcherry (the "Trustee's Suit");

3.       The *Trustee's Motion for Partial Summary Judgment* (the "MSJ") filed by the
         Trustee in the Trustee's Suit; and *Josh Todd's Motion to Remand Civil Action*
         *BC322066 to Los Angeles Superior Court* (the "MTR" and, with the MTD the
         MSJ and the Stay Motion, the "Motions") filed by Todd in that lawsuit styled

*Josh Todd v. Todd A. Meagher, et al.*, Superior Court case no. BC322066 (the "Todd Suit") filed originally by Todd against, *inter alia*, TEL and Todd Meagher ("Meagher") in Superior Court in Los Angeles California (the "State Court"), which was removed by Meagher to the United States Bankruptcy Court for the Central District of California (the "California Bankruptcy Court") and thereafter transferred by the California Bankruptcy Court on the Trustee's Motion to this court.

The court held a hearing on Stay Motion on November 6, 2008. At that time the court reserved decision on the Stay Motion pending a hearing that was held on November 12, 2008 on the MTD, the MSJ and the MTR.[1] During the two hearings the court heard argument from Todd and the Trustee respecting the Motions. The parties have also extensively briefed the merits of the Motions.

These matters are subject to the court's jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1). This memorandum opinion constitutes the court's findings and conclusions. Fed. R. Bankr. P. 9014 and 7052.

## I. Background

The disputes among Todd, Buckcherry, Meagher and TEL have their roots in a business arrangement among Todd, Meager and TEL entered into in 2003. At that time Todd, a singer and song writer, and Meagher agreed that Meagher would serve as Todd's manager. The vehicle for implementing their arrangement was TEL, which was half owned by each of Todd and

---

[1] At the November 12 hearing the court also granted the Trustee's motion to enter into a joint-prosecution agreement with Meagher respecting the Trustee's Suit and authorized the Trustee to employ special counsel in connection with the Trustee's Suit. Respecting those matters, the court heard testimony from the Trustee. During the same hearing, the court considered motions by Todd to reopen the chapter 7 case of Meagher and to grant Todd relief from the stay in that case for purposes congruent with those of the Stay Motion. The court ruled orally on these motions during the November 12 hearing and need not further address them here.

Meagher; Meagher was designated as TEL's managing member.  The roles of TEL (and by extension Meagher) and Todd were spelled out in an Operating Agreement (the "Agreement") dated June 23, 2003.  By the Agreement, the Trustee alleges in the Trustee's Suit, Todd, *inter alia*, assigned rights in certain musical compositions, including a song titled, whimsically, "Crazy Bitch," which, touching the tenderest emotions of Todd's many young fans, became a hit single.  Pursuant to the Agreement, Meagher arranged live appearances for Todd in Japan and various locations in the United States, a fact having potential significance under California law.

However, as time passed, Todd and Meagher found themselves often at odds.  Eventually in 2004, Todd decided to go his own way.  Since that time he has utilized Buckcherry for his operations.

In 2004 Todd also filed the Todd Suit in which he sought relief against Meagher and TEL for their alleged breaches of the Agreement. Meagher and TEL counterclaimed in the Todd Suit alleging certain claims under the Agreement against Todd. Trial of the Todd Suit was set to commence on September 26, 2005, in the State Court. However, just prior to the Todd Suit going to trial, Meagher filed in this court a case under chapter 7 of the Bankruptcy Code (the "Code").[2]

Todd then sought to buy Meagher's half interest in TEL from Meagher's bankruptcy trustee.  Meagher offered to purchase the interest in TEL from his trustee as well.  In the ensuing bidding process, Meagher was the successful bidder, recovering his interest in TEL.

Todd then returned to the State Court.  He filed an amended complaint in the Todd Suit in which he purported to eliminate any request for relief against Meagher for conduct which resulted in a liability recovery on which was barred by Meagher's chapter 7 discharge.  After an inconclusive squabble in this court over whether the amended complaint violated Meagher's

---

[2] 11 U.S.C. §§ 101 et seq.

discharge (*see* Memorandum Opinion, *Meagher v. Todd*, Doc. No. 20, Case No. 07-04162-dml-7 (Bankr. N.D. Tex. February 26, 2008)), the Todd Suit once again proceeded to the eve of trial. However, Meagher then caused TEL to file in this court for relief under chapter 7, once more preventing trial of the Todd Suit by reason of the automatic stay.

Following her appointment as Trustee for TEL, the Trustee filed the Trustee's Suit.  In the Trustee's Suit, the Trustee claims that Todd has purported to transfer to, *inter alia*, Buckcherry assets that, pursuant to the Agreement, Todd had assigned to TEL.

In the meantime, prior to TEL's filing, Meagher sought improperly to remove the Todd Suit directly to this court in his personal chapter 7 case.  When this court ruled removal invalid, and following determination of the adversary proceeding against Todd for violation of the discharge  injunction (see the Memorandum Opinion in *Meagher v. Todd* cited above), Meagher properly removed the Todd Suit to the California Bankruptcy Court.

Todd, in turn, filed the MTR in the California Bankruptcy Court.  On a competing motion to transfer venue of the Todd Suit, the California Bankruptcy Court transferred the Todd Suit to this court without ruling on the MTR.

Following a conference held in chambers in advance of a scheduled hearing in May 2008 on the MTD and the MTR, at this court's suggestion, the parties sought to mediate their various disputes.  The mediation, however, was unsuccessful.

The Trustee then filed the MSJ.  Todd responded with the Stay Motion, by which he seeks relief from the automatic stay of section 362(a)[3]of the Code in order to ask the California Labor Commissioner (The "CLC") to rule that the Agreement is void *ab initio* because it violates

---

[3] The Stay Motion also asserts that the stay should be found inapplicable to the proposed filing with the CLC (as defined below). The court concludes that the stay does apply (*see* Code § 363(a)(1) and (3)) and addresses the Stay Motion accordingly below.

the California Talent Agencies Act by reason of Meagher, who has never been licensed as a talent agent, arranging appearances for Todd. Todd maintains that this conduct by Meagher and TEL violated the Talent Agencies Act because these are tasks that may be undertaken only by a licensed talent agent.

## II.  Positions of the Parties

In the Stay Motion, Todd asserts that the Agreement is invalid under the Talent Agencies Act.  According to Todd, the CLC has exclusive jurisdiction to determine whether the Agreement violates the Act.  Thus, he maintains, the automatic stay must be modified so that he may bring the issue of the Agreement's validity to the CLC.

The Trustee argues in response that Todd has waived any right he may have had to assert the invalidity of the Agreement by pursuing his rights under the Agreement *inter alia* in the Todd Suit.  Alternatively, the Trustee notes that limitations on bringing such an action before the CLC have run.

In the MTD, Todd argues for dismissal of the Trustee's Suit based on two provisions of the Federal Rules of Civil Procedure (both applicable pursuant to Fed. R. Bankr. P. 7012). Under Rule 12(b)(6), Todd alleges the Trustee has failed to state a cause of action because she does not invoke the correct applicable fraudulent transfer statute. Todd also argues that the Trustee's complaint does not provide allegations commensurate with what is required under *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1967 (2007). The Trustee responds that the complaint is sufficient under the *Twombly* standard and has adequately identified the applicable fraudulent transfer statute. Under Rule 12(b)(7), Todd argues Meagher is a necessary party and, absent his joinder, the Trustee's Suit must be dismissed. The Trustee responds Meagher does not need to be

Memorandum Opinion                     - 6 –

joined, because the Trustee has concluded that just Todd misappropriated rights belonging to the estate.

Alternatively the MTD asks that this court abstain from hearing the Trustee's Suit.  The test for abstention, as discussed below, is factor based.  Todd and the Trustee disagree respecting the proper evaluation of these factors, Todd insisting they favor abstention and the Trustee maintaining that the factors suggest this court should retain jurisdiction over the Trustee's Suit.

In the MSJ, the Trustee asks that the court rule that, according to the plain meaning of the Agreement, Todd transferred certain compositions and intellectual property rights to TEL.  Todd counters that the Agreement does not plainly effect such a transfer.  In any event, Todd insists, the Agreement is invalid under the Talent Agencies Act.

### III. Discussion

A.   <u>The MTD, MSJ, MTR and the Trustee's Suit</u>

During the November 12 hearing, the court advised the parties that, in addition to considering the MTR, it was considering transferring the Trustee's Suit to the California Bankruptcy Court pursuant to Fed. R. Bankr. P. 7087.[4]  As noted in the order of the California Bankruptcy Court transferring the Todd Suit to this court, this court has previously held that any remand by it of an action must be to the court transferring the action to this court.  *See In re Agent Systems, Inc.*, 289 B.R. 828, 835 (Bkrtcy. N.D. Tex., 2002); *See also In re U.S. Refining & Marketing Co., Inc.,* 210 F.3d 387, 2000 WL 14398, at *1 (9th Cir.2000).  If, in this case, the court grants the MTR, the Todd Suit would therefore be remanded to the California Bankruptcy Court which court would then be able to remand the Todd Suit to the State Court.

---

[4]      Rule 7087 provides that "the court may transfer an adversary proceeding . . . to another district pursuant to 28 U.S.C. §1412." The court also made Rule 7087 applicable to the Stay Motion.  See Fed. R. Bankr. P. 9014(c). Given its disposition of the Stay Motion, the court need not consider transferring it as well for further consideration by the California Bankruptcy Court.

During the November 12 hearing, the court also informed the parties of its view that the Trustee's Suit and the Todd Suit were so interrelated, due to their mutual dependence on construction of the Agreement, that they should be tried before the same court – a view which the court understands the parties share. Thus, if the court concludes that the MTR should be granted, it should also transfer the Trustee's Suit to the California Bankruptcy Court.

In determining whether to transfer the Todd Suit and the Trustee's Suit to the California Bankruptcy Court, this court will assume that the California Bankruptcy Court would remand the Todd Suit to the State Court and, by abstention (as sought by Todd in the MTD) or consolidation, cause the claims of the Trustee to be pursued in the State Court as well. The court will, therefore, adopt the factor-based test used by courts in determining whether remand is appropriate[5] to decide whether the two adversary proceedings should be transferred to the California Bankruptcy Court. The pertinent factors have been listed by this court in *In re Denton County Elec. Co-op., Inc*., 281 B.R.876, 881 (Bkrtcy. N.D. Tex. 2002), adopting the factors applied by the District Court in *Flores v. Baldwin,* 2002 WL 1118504, at *8, 2002 U.S. Dist. Lexis 9539, at *19-20 (N.D.Tex. May 28, 2002); *Hester v. Coho Energy, Inc. (In re Coho*

---

[5]    As no proceeding is presently pending in the State Court, mandatory abstention under 28 U.S.C. §1334(c)(2) is not appropriate. Therefore, the court, in deciding the abstention issue, would test the Trustee's Suit and the Todd Suit against 28 U.S.C. §1334(c)(1) which reads:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The factors cited below are used in determining whether to abstain under this provision (as stated in the cases cited below). Additionally, same factors are often used in deciding whether a case should be remanded.  *See*  e.g., *Regal Row Fina, Inc., v. Washington Mutual Bank*, 2004 WL 2826817, at * 8 (N.D.Tex.); *Sabre Technologies, L.P. v. TSM Skyline Exhibits, Inc.*, 2008 WL 4330897, at * 4 (S.D. Tex. 2008). As the court has determined that the Trustee's Suit should be transferred if it grants the MTR, it is appropriate to these factors in considering the MTR.

*Energy, Inc.),* 2002 WL 523948, at *5, 2002 U.S. Dist. LEXIS 5862, at *19-20 (N.D.Tex. Apr. 5, 2002). These factors are

(1)     The effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

(2)     The extent to which state law issues predominate over bankruptcy issues;

(3)     The difficulty or unsettled nature of the applicable state law;

(4)     The presence of a related proceeding commenced in state court or other nonbankruptcy court;

(5)     The jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6)     The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)     The substance rather than form of an asserted "core" proceeding;

(8)     The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)     The burden on the bankruptcy court's docket;

(10)    The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11)    The existence of a right to a jury trial; and

(12)    The presence in the proceeding of non-debtor parties.

*See also, In re LJM2 Co-Investment, L.P.,* 327 B.R. 786, 790 (Bkrtcy. N.D. Tex. 2005); *Broyles v. U.S. Gypsum Co.,* 266 B.R. 778, 785 (E.D. Tex. 2001); *Sabre Technologies,* 2008 WL 4330897, at * 4 (S.D. Tex. 2008). Taking these factors in order, it is clear that the Trustee's Suit and the Todd Suit should be transferred to the California Bankruptcy Court in the expectation that that court is likely to transfer them to the State Court.

First, there is not likely to be any material difference respecting administration of TEL's chapter 7 case whether the suits in question are tried in this court or in California. Indeed, given the familiarity of the State Court with the Todd Suit, it is likely that both suits may be considered more efficiently if they are left to the State Court.

The Trustee's principal argument opposed to remand (and abstention), however, properly falls under this heading. The Trustee insists that it is inconvenient and perhaps economically impossible for her to litigate in California rather than before this court. The court, though, does not see the efficiency of case administration as turning on the convenience of the Trustee. Rather, in evaluating this factor, the court believes it must weigh the interrelationship between the litigation in question and the underlying bankruptcy case to determine whether pursuit of the litigation in another forum would interfere with this court's administration of TEL's underlying chapter 7 case. As the court does not anticipate activity in the underlying chapter 7 case, transfer of the suits to California does not affect administration of TEL's bankruptcy case.

If, in fact, the economics of litigation would be so unfavorable as to impair a Texas trustee's ability to administer TEL's principal assets (the litigation in question), that does not warrant overlooking the obvious and important connections between the litigation and California. Rather it is an appropriate reason for transferring venue of TEL's chapter 7 case to California.

Second, although the Trustee invokes sections 544 and 542 of the Code in asserting fraudulent transfer and turnover claims against Todd and Buckcherry, the heart of those claims turns on state law.[6] The remaining claims in both suits depend on state law. In fact, both suits

---

[6]    The Trustee cites the Texas fraudulent transfer statute in her complaint. The court, without deciding is inclined to agree with Todd that California fraudulent transfer law would apply to the transfers cited in the Trustee's Suit. The court concurs with Todd that the Trustee's claim under Code § 542 does not pose a question of federal law. Section 542, unlike the avoidance provisions of subchapter III of chapter 5 of the

depend upon construction of the Agreement under California law.  Finally, in responding to the

MSJ, Todd raises the same issues under the Talent Agencies Act as he does in the Stay Motion.

Thus, state law predominates in both suits, and this factor favors abstention and remand.

Third, the California law involved – entertainment law – is an area much more

familiar to California courts than this court.  Additionally, entertainment law is an area in which

California's public policy is implicated.  *See SIMS Snowboards, Inc., v. Kelly,* 863 F.2d 643, 646

(9th Cir. 1988), *Rokos v. Peck*, 227 Cal. Rptr. 480, 487 (Cal. App. 2. Dist. 1986). *See also Chiba*

*v. Greenwald*, 67 Cal.Rptr.3d 86, 93 (Cal. App. 2007); *Yoo v. Robi,* 24 Cal.Rptr.3d 740, 750

(Cal. App. 2005).  *See also Styne v. Stevens*, 26 P.3d 343, 354 (Cal. App. 2001).  Thus, while this

court is confident of its ability to apply properly the applicable law, this factor favors abstention

and remand.

The fourth factor also favors abstention and remand.  Although no related proceeding is

presently pending in the State Court, the familiarity of the State Court with the Todd Suit and its

interrelation with the Trustee's Suit weights this factor against retention of the suits here.

The fifth factor, jurisdictional basis, arguably favors retention of the suits in this court

considers the facial allegations in the suits. The Trustee's Suit is, at least in part, assertedly core.

28 U.S.C. §157(b)(2)(E) and (H).  Nevertheless, at bottom, both suits turn on the construction of

the Agreement. While the Agreement is property of the estate, this court's jurisdiction to

question, respecting its construction is dependent solely on section 1334(b). See *Northern*

*Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).

---

Code, provides no more than that property belonging to an estate should be turned over to the trustee.  *See In re Heritage Organization, LLC.*, 350 B.R. 733, 736 (Bkrtcy. N.D. Tex 2006); *In re Canon*, 130 B.R. 748, 752 (Bkrtcy. N.D. Tex. 1991).  The dispute between Todd and the Trustee is whether, in fact, the property the Trustee asks be turned over is property of the estate.  That determination depends on the Agreement and the law of California.

The sixth factor, relation of the suits to TEL's chapter 7 case, also arguably favors retention in this court. The two suits are central to TEL's bankruptcy. The Todd Suit could result in a substantial claim against TEL. The Trustee's Suit is apparently the only real asset in the TEL estate. However, unlike in a rehabilitation proceeding under, say, chapter 11, the importance of this factor in the chapter 7 context is minimal. Moreover, as discussed above, the real issue for the Trustee is one of convenience.

The seventh factor returns the court to the Trustee's core claims. The Todd Suit includes no true core claims. As the Trustee's "core" claims in the Trustee's Suit in fact depend upon the effect of the Agreement, the court concludes this factor is neutral.

The eighth factor clearly favors remand and abstention. There is no way to separate from the state law issues – construction of the Agreement, effect of the Talent Agencies Act – the Trustee's claims for avoidance (or, if it were a true core claim, for turnover).

The tenth factor is, in this court's view, neutral. The court does not find evidence of forum shopping in the record before it.

The final two factors are also neutral. The issue of entitlement to a jury has not been presented to this court. As for non-debtor parties, the non debtor (and non-trustee) parties in these two adversaries either do not have a problem with this court hearing the suits (Meagher) or are being pursued by the Trustee to recover property she claims for the estate (Todd and Buckcherry). This is not a case where disputes between non-debtor parties independent of those involving the bankruptcy estate militate in favor of this court relinquishing jurisdiction.

The court notes that the weight to be given to these factors also varies. *See In re Doctors Hosp. 1997 L.P.*, 351 B.R. 813, 853 (Bkrtcy. S.D. Tex. 2006) (determination of permissive abstention is not a matter of pure arithmetic). In the case at bar, in the interest of comity, the

court concludes that the most important factor is that California law is central to all of the disputes among the parties. Placing extra weight on the interest in comity is consistent with the legislative purpose in allowing for permissive abstention.  On its face, section 1334(c)(1) highlights the importance of deference to state law in deciding whether abstention is appropriate. Such deference is equally important in considering removal.  Given the significance of the Agreement to both the Trustee's Suit and the Todd Suit and the special concern of California with entertainment law, that deference is properly served by this court acting to leave resolution of the parties' disputes to the courts of California.

Based on its analysis of all the factors and persuaded by the overriding significance of California law, the court concludes it should send the Todd Suit and the Trustee's Suit to the California Bankruptcy Court for disposition, including for disposition of the MTD, MSJ[7] and MTR.  While the court would not presume to decide whether the MTR and the MTD (as to abstention) should be granted, the court does anticipate that it is likely the California Bankruptcy Court will agree that both suits are best referred to the State Court.

B.    The Stay Motion

The court also concludes that it is best left to the California courts whether effectiveness of the Agreement should be determined initially in a proceeding before the CLC.  Accordingly, the court will modify the automatic stay of section 362(a) of the Code to permit Todd to raise in the State Court (or, if it retains the two suits, the California Bankruptcy Court) the issue of whether the Agreement should be submitted to the CLC.  Should that court determine the CLC is the proper forum to consider the validity of the Agreement, the stay is further modified to permit

---

[7] The MTD (except regarding abstention) and the MSJ require consideration of state law.

Todd to commence appropriate proceedings before the CLC (other than proceedings seeking affirmative relief against the Trustee or TEL).

## IV. Conclusion

For the reasons discussed above, the Stay Motion is granted to the limited extent provided in this memorandum opinion. The MTD (to the extent it does not seek abstention) and MSJ will be carried for determination by whatever court ultimately tries the Todd Suit and the Trustee's Suit. As to the abstention sought in the MTD, that issue will be carried for determination by the California Bankruptcy Court. The MTR is granted, and the Clerk of this court is directed to transfer the Todd Suit to the California Bankruptcy Court. Further, pursuant to Fed. R. Bankr. P. 7087, the clerk is directed to transfer the Trustee's Suit to the California Bankruptcy Court as well.

It is so ORDERED.

# # # # END OF MEMORANDUM OPINION # # # #